ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. DOWNS.

(Court of Civil Appeals of Texas. Texarkana. Jan. 30, 1913. Rehearing Denied Feb. 13, 1913.)

1. MASTER AND SERVANT (§ 124*)—MASTER'S DUTY—INSPECTION OF LINES.

A railroad company owed a brakeman no other duty than to exercise ordinary care to discover defects in a hand brake, and was not liable for actual failure to discover such defects if it discharged such duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

2. MASTER AND SERVANT (§ 293*)—INJURIES—INSTRUCTIONS.

In a brakeman's action for injuries by being thrown from a freight car by the brake wheel rapidly revolving because of a defective brake ratchet dog, the court instructed that as to foreign cars defendant owed to its employés the duty "to exercise ordinary care to inspect and discover" any defects in the dog, and, if any defects were found making it unsafe, to use ordinary care to repair them, and further instructed that if a defective condition in the dog, if any, "would have been discovered by a reasonable inspection, within a reasonable time to have repaired the same, by using ordinary care, before plaintiff was injured," and if an ordinarily prudent person would have reasonably anticipated that a brakeman would likely be injured by the defect, and if defendant

failed to use ordinary care to "inspect and discover" the defect resulting in plaintiff's injury, he could recover. Held, that the instruction did not charge that defendant owed plaintiff the duty to actually discover defects in the ratchet dog, especially when considered in connection with other instructions that plaintiff could not recover if defendant used reasonable care to inspect and discover the defects, and that the only duty owed to plaintiff was to "exercise ordinary care and caution to inspect such car to ascertain whether or not the same was reasonably safe to be used by its employés," and that to authorize a recovery the jury must find that the defect could have been discovered by the exercise of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

3. TRIAL (§ 296*)—INSTRUCTIONS — CURE OF ERROR.

Where, in an action for injuries to a brakeman from a defective brake ratchet dog, the court submitted the only theory upon which the jury could find for plaintiff, which was that the dog was defective and that defendant was negligent in not discovering the defect in time to have remedied it, any error in instructing that it was defendant's duty, "if any defects were found," to use ordinary care to repair them, when there was no evidence that the inspectors found, or attempted to repair, any defects, was harmless.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

4. MASTER AND SERVANT (§ 293*)—INJURIES—INSPECTION—CARE REQUIRED.

An instruction, in an action for injuries to a brakeman from a defective brake ratchet dog, that the defect must have been discoverable by a "reasonable" inspection in order to authorize a recovery, was not erroneous as placing too strong a duty upon defendant company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a railroad company for injuries to a brakeman from a defective brake ratchet dog, permitting a brake wheel to revolve rapidly and throw plaintiff from the car, the court instructed that plaintiff would be guilty of contributory negligence if his own negligence concurred with that of defendant's in failing to "inspect, discover, and repair" the defects, and also instructed that if plaintiff's fall was not proximately caused by the defect in the brake dog, and if the jury did not believe that defendant failed to use ordinary care to inspect and discover the defects, they should find for defendant. Held, that the instructions were not on the weight of the evidence, as calculated to lead to the belief that defendant failed to inspect the dog, and that it was defective, and the defect should have been discovered by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

6. TRIAL (§ 260*)—INSTRUCTIONS—REQUEST.

In an action for injuries to a brakeman from a defective brake ratchet dog, the court refused the charge requested by defendant directing a finding for it, notwithstanding the defect. unless the jury also believed that its employés charged with the duty of inspecting the dog "could by the exercise of ordinary care have discovered the defective condition * * * before plaintiff alleges he was injured, and in time to have remedied the same by the exercise of ordinary care," and instructed that plain-

tiff could not recover if defendant had used ordinary care to inspect the car and failed to discover the defect, and that it did not insure the braking appliance, but was only bound to use ordinary care to inspect and discover defects therein, which instructions were reiterated. *Held*, that the instructions given were substantially the same as those requested, so that the refusal was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

7. MASTER AND SERVANT (§ 286*)—INJURIES —JURY QUESTION—SUFFICIENCY OF INSPECTION.

In an action for injuries to a brakeman by being thrown from a freight car by a defective brake ratchet dog, evidence *held* to make a jury question whether defendant would have sufficiently discharged its duty, if it had properly inspected the brake dog at certain points.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

8. MASTER AND SERVANT (§ 278*)—INJURIES— SUFFICIENCY OF EVIDENCE.

Evidence, in a brakeman's action for injuries by being thrown from a car by the sudden revolving of the brake wheel, because of a defective brake ratchet dog which failed to hold, *held* to sustain a finding that the brake dog was defective.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

9. MASTER AND SERVANT (§ 278*)—SUFFICIENCY OF EVIDENCE.

Evidence, in a brakeman's action for injuries by being thrown from a car because of a defective brake ratchet dog, *held* to sustain a finding that defendant's employés did not exercise ordinary care in inspecting the car in time to have remedied the defect before the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by Earl T. Downs against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellee was in appellant's service as a brakeman on one of its freight trains. In the train was a car loaded with hay consigned to Morrill, a station north of Lufkin. The car belonged to another railroad company, and had been received by appellant at Texarkana from another carrier. When the train reached Morrill the car containing the hay was switched to a side track and "kicked," for the purpose of moving it to a point on the side track where it was to remain until unloaded. In the discharge of his duty appellee climbed upon the car for the purpose of applying the brake and so stopping the car at the point where it was to be left. Among the appliances used to operate the brake was a rod, a ratchet wheel, and a "dog." The rod, wheel, and dog were made of iron, and were placed at the end of the car. The rod extended from the bottom of the car, through a platform 8 or 10 inches wide and 2 or 3 feet long built to the end thereof, and through the ratchet wheel, which rested, unfastened to anything, on the platform, to about the top of the car. Both the rod and the hole in the ratchel wheel through which it passed were square-shaped, so that when the rod revolved the wheel revolved with it. The dog was shaped something like the letter "S," and was so attached to the platform as to catch in the teeth of the wheel as it revolved, and so hold the brake when set. As the car approached the place where it was to be left on the side track, appellee, then standing on the platform, set the brake, for the purpose of decreasing its speed. Because, appellee claimed, the dog was defective, it released the brake, causing the rod to which he was holding to revolve rapidly, thereby throwing him from the platform and causing the injury to his person of which he complained. On the ground that appellant had been negligent in failing to discover and repair the defect in the dog, and therefore was liable to him in damages for the injury he had suffered, appellee sought and recovered the judgment for $15,000 from which the appeal is prosecuted. The testimony was sufficient to support the findings of the jury, involved in their verdict, and we find as facts that the brake was defective as charged, that appellant was guilty of negligence in not discovering and repairing the defect, that appellee, without fault on his part, as a proximate result of the defect, was injured as he alleged he was, and that thereby he was damaged in the sum awarded to him.

Marsh & McIlwaine, of Tyler, and E. B. Perkins and D. Upthegrove, both of Dallas, Tex., for appellant. Johnson & Edwards, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). All except one of the assignments present questions as to the action of the court below in giving and refusing instructions to the jury. The portions of the main charge attacked as erroneous are the fourth, sixth, seventh, eighth, ninth, and tenth paragraphs thereof, which are as follows:

"(4) As to foreign cars coming on defendant's line of road, it owed to its employés engaged in the operation of same the duty to use ordinary care to inspect and discover any defects in the 'dog' of the braking wheel, and, if any defects were found therein which rendered it not reasonably safe for the use of its employés in using same, to use ordinary care to repair same.

"(5) Now, if you find that plaintiff has shown by a preponderance of the evidence that the 'ratchet dog' on the brake wheel in question had too much play, was loose, insecure, out of repair, and not reasonably safe for the use of brakemen in setting the brake on the car in question; and if you find that

such defective condition of the 'ratchet dog,' if any, would have been discovered by a reasonable inspection thereof within a reasonable time to have repaired same by using ordinary care before plaintiff was injured, if he was; and if you find an ordinarily prudent person would have reasonably anticipated that some brakeman in its employ would likely be injured in attempting to set the brake with the dog in such defective condition, if you have found it was defective; then, if he has further shown, by a preponderance of the evidence, that the defendant failed to use ordinary care to inspect and discover the defect, if any, in the dog, within a reasonable time to have repaired same by the use of ordinary care before plaintiff was injured, if he was; and if you further find that as the direct and proximate result of such defective condition of the dog, if you have found it to be defective, when the plaintiff attempted to set the brake on said car, the dog flew out of the ratchet and caused plaintiff to fall and receive injury—you will find for the plaintiff.

"(6) If you find that the dog in question was not defective, or if you find it was but that defendant used ordinary care to inspect said car, and failed to discover same, then plaintiff cannot recover.

"(7) The defendant did not insure safety of the braking appliance on said car, but only owed to plaintiff (the duty) to use ordinary care to inspect, and discover any defect therein; and, if it used such care to inspect and discover same, then the plaintiff cannot recover, although the ratchet dog was loose, had too much play, and was defective and out of repair.

"(8) If you shall find that it was the duty of plaintiff to examine the braking appliance on the car to ascertain if it would hold the car, before setting same in on the side track at Morrill, then if you find he failed to use ordinary care to so examine same, then he would be guilty of such negligence which, if it concurred with some negligence, if any, of the defendant in failure to inspect, discover, and repair the defect, if any you find in the dog, in causing injury, if any, to the plaintiff, would make him guilty of contributory negligence.

"(9) If you find that plaintiff was guilty of some act of negligence in the manner in which he attempted to set the brake on the occasion in question, and if such negligence, if any, concurred with some negligence, if any, of defendant in failing to inspect, discover, and repair the defect, if any you find, in the dog, it would make him guilty of contributory negligence.

"(10) If you find that the plaintiff did not fall and receive injury while attempting to set the brake on the occasion in question, you will find for the defendant. Or if the plaintiff fell and was injured while attempting to set the brake, yet if you do not find

that such fall directly and proximately resulted from a defective condition of the ratchet dog, and that defendant failed to use ordinary care to inspect and discover same, you will find for the defendant."

[1, 2] It will be noted that in the fourth paragraph of the charge the court told the jury it was appellant's duty to use ordinary care to inspect and "discover" defects in the dog, and in the fifth paragraph told them, other conditions concurring, to find for appellee if they believed the dog was defective and that appellant "failed to use ordinary care to inspect and 'discover' the defect." Appellant insists, and we agree, that it owed to appellee only the duty to use ordinary care to discover defects in the dog, and, if it discharged that duty, was not liable to him because it failed to discover the defect in it. Appellant further insists, but we do not agree, that the effect of the portions of the charge just referred to was to tell the jury it owed appellee the duty to discover defects in the dog. In as plain language as could have been used, it seems to us, the court in the fourth paragraph told the jury that the duty appellant owed to appellee was to use ordinary care to discover defects, and in the fifth paragraph told them they must believe, before finding for appellee, that appellant failed to use such care. We do not think the jury could have understood the court in either of those instructions to have meant to tell them that appellant was liable, notwithstanding it used proper care, if it failed to discover the defect; and, certainly, they could not have so misunderstood the court, in view of the fact that in the sixth and seventh paragraphs of the charge he told them appellee was not entitled to recover if appellant used such care, and of the fact that at appellant's request he further instructed them as follows: "You are charged that, the evidence in this case showing that the car upon which plaintiff alleges he was injured was not the property of defendant, but that same was the property of another railroad company, the only duty owed by defendant to plaintiff was the duty to exercise ordinary care and caution to inspect said car to ascertain whether or not the same was reasonably safe to be used by its employés, and although you may believe from the evidence that the dog or pawl on the car was defective at the time plaintiff alleges he was injured, and that he was injured by reason of such defects, if any, it will still be your duty to return a verdict for the defendant, unless you further believe from a preponderance of the evidence that the employés of defendant, whose duty it was to inspect the car, could, by the exercise of ordinary care and caution on their part in inspecting the car before plaintiff was injured, have discovered that the dog or pawl was defective."

With reference to said fourth paragraph

It is further insisted that it was calculated to lead the jury to believe that the court thought the dog was defective, and that appellant knew it, or should have known it, in time to have repaired it before the accident occurred. The instruction, as we understand it, is wholly free of cause for criticism on that ground. The same objection made to the eighth, ninth and tenth paragraphs of the charge is, we think, also without merit.

[3] Said fourth paragraph is further attacked as erroneous in that it told the jury it was appellant's duty, "if any defects were found" in the dog, to use ordinary care to repair same. The contention is that there was no evidence tending to show that appellant's inspectors found or attempted to repair defects in the dog, and that the instruction was erroneous because calculated to lead the jury to believe there was such testimony. Conceding there was no such testimony (and there was none that the inspectors attempted to repair defects in the dog), and that the instruction therefore was erroneous, it was abstract in its nature, and, we think, harmless when considered with reference to other portions of the charge. In the fifth paragraph, where the court submitted to the jury the only theory on which they were authorized to find for appellee, they were told they must believe the dog was defective and that appellant was guilty of negligence in not discovering the defect in time to have repaired it before the accident occurred. Nowhere in the charge did the court authorize them to find for appellee if they believed the inspectors discovered the defect and attempted to repair it. A similar objection, made to the sixth and seventh paragraphs of the charge, is not more meritorious, and is overruled.

[4] In the fifth paragraph of the charge the jury were told, as one of the conditions which they must believe to have existed before they could find for appellee, that the defect in the dog "would have been discovered by a reasonable inspection thereof." The objection urged to this part of the instruction is that the court, in using the word "reasonable," "put the duty owing by appellant to appellee too strong." We do not think so. The duty appellant owed appellee was to use such care in inspecting the dog as an ordinarily prudent person would have used, as the jury were repeatedly told in that and other portions of the charge. The jury could not have understood "a reasonable inspection" to mean anything else than such an inspection as such a person would have made.

[5] In the eighth and ninth paragraphs, it will be observed, issues as to contributory negligence on the part of appellee were submitted. The court in those paragraphs told the jury appellee would be guilty of contributory negligence, if negligence on his part concurred with negligence of appellant in failing "to inspect, discover, and repair" defects in the dog, in causing the accident. In the tenth paragraph the jury were instructed to find for appellant, if they believed appellee did not fall and suffer injury in attempting to set the brake, or if they believed he did so fall and was injured, yet did not believe that his falling was proximately caused by a defect in the dog and that appellant "failed to use ordinary care to inspect and discover" the defects. The assignments attacking those paragraphs of the charge as erroneous are grouped. The objections urged in propositions under the assignments are: (1) That said paragraphs were upon the weight of the evidence, in that they were "calculated to lead the jury to believe that in the opinion of the court appellant had failed to inspect the dog," and that "the dog was defective, and that appellant should have discovered and repaired the defect before appellee was injured"; and (2) that "the court by instructing the jury in effect that it was appellant's duty to inspect, discover, and repair the defect, if any, in the dog, put the duty resting on appellant too strong." We do not think the instructions subject to the objections urged.

[6] Complaint is made of the refusal of the court to give to the jury special charges requested by appellant, instructing them to find for it, notwithstanding they believed the dog was defective and the defect caused the injury to appellee, unless they also believed that its employés charged with the duty to inspect the dog "could, by the exercise of ordinary care, have discovered the defective condition, if any, of the braking appliance before plaintiff alleges he was injured, and in time to have remedied same by the exercise of ordinary care and caution on their part." The court in effect so instructed the jury when he told them, in the sixth paragraph of his charge, that appellee was not entitled to recover if the dog was defective, if they believed appellant had "used ordinary care to inspect said car and failed to discover same"; and in the seventh paragraph when he told the jury that appellant "did not insure the braking appliances on the car, but only owed to plaintiff (the duty) to use ordinary care to inspect and discover any defect therein; and if it used such care to inspect and discover any defect in same, but failed to discover same, then plaintiff cannot recover"; and in the fifth paragraph, where he made, as one of the conditions upon which the jury were authorized to find for appellee, that they must believe appellant "failed to use ordinary care to inspect and discover the defect, if any, in the dog, within a reasonable time to have repaired same by the use of ordinary care before plaintiff was injured, if he was"; and in the special charge given at appellant's request, hereinbefore set out.

[7] So, also, complaint is made of the re-

fusal by the court to give a special charge requested by appellant, instructing the jury to find for it if they believed "the car was inspected by its inspectors at Texarkana and Tyler before plaintiff was injured, and that such inspectors used the degree of care and caution that would have been used by an ordinarily prudent man under similar circumstances to ascertain or discover whether said pawl or dog was in a reasonably safe condition, and if said inspectors failed to discover that said dog or pawl was defective," notwithstanding they also believed the dog was defective and that appellee was injured because of the defect. Whether appellant discharged the duty it owed appellee, if it had the dog properly inspected at Texarkana and Tyler, or not, we think was a question of fact to be determined by the jury, and not one of law to be determined by the court. Therefore we think it would have been error to have instructed the jury as appellant requested in the charge refused. If Railway Co. v. Dudley, 90 Va. 304, 18 S. E. 276, decided by the Supreme Court of Virginia, when considered with reference to its facts, should be said to hold to the contrary of the conclusion reached by us, we would not follow it.

[8, 9] The complaint undisposed of by what has been said is one attacking the verdict as "contrary to law and against the great weight and preponderance of the evidence, in that it appears from the great weight and preponderance of the evidence * * * that the dog or pawl was not defective, and that if it was defective defendant's agents and servants whose duty it was to inspect and remedy the defect, it being a foreign car, exercised ordinary care and caution in the inspection of the car, and that they failed to discover the defect, if any, in said dog or pawl prior to the time that plaintiff was injured." The witnesses Craig and Crenshaw were appellant's car inspectors at Texarkana. They testified that appellant received the car at that point from another carrier, on the day before the accident occurred, and that they inspected it. Craig testified: "I inspected the running gear and the under part of the car, and Mr. Crenshaw inspected the roof. I have no independent recollection of the car or my inspection thereof, further than that it was in that train. I inspected the lower part of the braking appliances; my inspection revealed no defect. I have no defect on my book of any part of the braking appliances below. If I had found any defects, I would have made note of it on the book." Crenshaw testified: "Mr. Craig inspected the lower part of the train and I went over the roof and inspected it. It is a part of the business, or duty, of the man who goes over the roof, to inspect the braking appliances at the top of the car. In this instance that was my business. There is no notation made of any defect in the braking appliances of the car. If the braking appli-

ances when it passed through Texarkana had been defective, and I had discovered it, my duty would have been to mark the car 'bad order' and hold it until it was fixed. If at that time I had found the dog that works upon the ratchet wheel reversed, I would have remedied it. In the inspection of the braking appliances, * * * the one who goes over the top of the car sets the dog in the ratchet wheel, which is done by shoving the dog up so it will catch in the cogs of the ratchet wheel, and takes the ratchet wheel and works it backwards and forwards to see if the ratchet wheel is fastened securely on the brake staff, and if the dog will hold. It is not necessary to set the brake up. We apply the dog and manipulate the brake to see if it will hold. I have no recollection, independently of my records, about this car at all. If the dog had been reversed so it would not hold, I certainly would have discovered that." Willis, Walker, and Adams were appellant's car inspectors at Tyler. At the time of the trial Willis was dead, but Walker and Adams testified as witnesses for appellant. Walker testified that on the night before the accident he inspected one side of the car, Willis the other, and Adams the top thereof. He further testified: "I have no notation at all of any defects on that particular car." Adams testified: "I went over the top of the car and inspected the braking apparatus. * * * I don't know anything about this particular car myself. I don't remember anything about it. * * * If in inspecting the car I had found the dog reversed so that it would not hold in the ratchet wheel, I would never have let the car go out in that fix. * * * I have no notation against that car, and that indicates that it was O. K." Appellee testified: "I should judge I was about 8 or 9 car lengths from the road crossing when I first undertook to set the brake up. I set the brake up at that time so as to check the speed of the car. Mr. Jones said they wanted to stop the car just north of the road crossing. I tightened up the brake in order to check the speed to stop the car at that place. I had to set the brake pretty tight to get it down where I could control it and stop it. When I got to this crossing I was standing in the position above indicated (upon the brake platform facing towards the car), and when she hit the crossing the dog flew out of the ratchet and the brake flew off. The company did not keep the dirt out of the flanges along on the road crossing, and the car when it struck the dirt road, instead of running smooth on the rails, ran on the dirt, which caused the car to jump up and down. The brake came loose right at or about the crossing; that is, the dog flew up out of the ratchet and turned around. * * * The brake flew or whirled around. * * * The ratchet dog had whirled clear around; that is, the end, instead of being where it should have been, was just opposite. It could not

have reversed unless it went under or over the wheel. The lag screw that was intended to hold the dog down to the step (platform) had an inch or an inch and a half perpendicular play. * * * The effect of the lag screw having that much perpendicular play would be to permit the dog to slip up over the ratchet wheel." Appellee's witness Dew testified: "The dog seemed to be loose—it had lots of play. * * * The dog was loose up and down. It had play up and down, so that the end of it that is supposed to catch the teeth of the ratchet wheel could raise up. I don't know, but suppose it could raise up one-half an inch, or maybe more than that; but I think it could raise up half an inch at least. I didn't measure the exact distance it could raise up. It could probably raise up an inch, I should imagine. It was about an inch that played up and down; could have possibly amounted to an inch." Murray, a witness for appellee, testified: "The car had been in service long enough for the ratchet dog, while being turned back and forth in setting the brake, to be worn down considerably into the step or platform that it rested upon. There was a bolt that stuck up through this platform and the ratchet dog. My best recollection is that there was no iron or steel plate under the ratchet dog, but only the wooden platform. The ratchet dog had worn the wood where it rested upon it. The ratchet dog, from its natural wearing down in the wood, left the head of the bolt sticking up some distance where it stuck up through the dog; it stuck up there a little. I did not measure how far it stuck up. I would not say that it did not stick up an inch, nor that it did." Appellee's witness Stamps testified that as a brakeman employed by appellant he set the car in the yards at Lufkin, to which it was carried on the night of the day the accident occurred. He further testified: "I operated the dog with my foot: I couldn't see it. I discovered from the feel of it that it was loose. * * * When I touched it with my foot in the dark, I could tell it was loose and shaky." Several witnesses introduced by appellant testified they examined the brake after the accident, but on the day thereof, for the purpose of ascertaining if it was defective, and found it reversed, as appellee testified it was; but they and a number of other witnesses for appellant, who also examined the brake for the purpose of determining its condition, said it was not too loose, did not work up and down, and was not defective in any respect. It will be observed that according to the testimony of witnesses for appellee the dog was defective at the time of the accident, while according to the testimony of witnesses for appellant it was not. It also will be observed that there was testimony—that of the witness Murray, for instance—tending to show the dog was defective at the time the car was inspected at Tyler, and that the defect would have been discovered then had the inspection been made with proper care by competent inspectors. It was the duty of the jury to determine the conflict in the testimony, and there is nothing in the record which indicates, to our minds, that they erred in the conclusions their verdict shows they reached.

The judgment is affirmed.